IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CHARLES GILES, et al.,
              Plaintiffs,

     v.

PHELAN, HALLINAN & SCHMIEG,
L.L.P., et al.,
              Defendants.

Civil Action
No. 11-6239 (JBS/KMW)

**OPINION**

APPEARANCES:

John G. Narkin, Esq.
Narkin LLC
1662 S. Loggers Pond Pl. # 31
Boise, ID 83706
    -and-
Nicole M. Acchione, Esq.
Lisa J. Rodriguez, Esq.
Trujillo Rodriguez & Richards, LLP
258 Kings Highway East
Haddonfield, NJ 08033
    -and-
James G. Flynn, Esq.
Robert I. Harwood, Esq.
488 Madison Avenue, 8th Floor
New York, New York 10022
    Attorneys for Plaintiffs Charles J. Giles and Diane Giles

Bradley L. Mitchell, Esq.
Brian Phillip Sullivan, Esq.
Steven J. Adams, Esq.
Stevens & Lee, PC
Princeton Pike Corporate Center
100 Lenox Dr., Suite 200
Lawrenceville, NJ 08648
    Attorneys for Defendant Wells Fargo Bank, N.A.

Kenneth Goodkind, Esq.
Flaster Greenberg, PC
1810 Chapel Ave. West
Cherry Hill, NJ 08002

Attorney for Defendants Phelan Hallinan & Schmieg, P.C.;
Lawrence T. Phelan; Francis S. Hallinan; Daniel G. Schmieg;
Rosemarie Diamond; Full Spectrum Services, Inc.; and Land
Title Services of New Jersey, Inc.

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

Plaintiffs Charles J. and Diane Giles bring this proposed
class action for damages under the Racketeering Influenced and
Corrupt Organizations Act ("RICO"), 18 U.S.C. 1962(c), because
they allege that Defendants engaged in a scheme to prosecute
fraudulent mortgage foreclosure lawsuits. This matter comes
before the Court on two motions to dismiss [Docket Items 75 &
78] Plaintiffs' Third Amended Complaint ("TAC") [Docket Item
74]. The Court heard oral argument on May 14, 2013.

This case presents several novel issues in this Circuit,
including whether the New Jersey litigation privilege bars
federal RICO claims against lawyers, parties, and their
representatives arising from litigation practices and whether
the Noerr-Pennington doctrine bars federal RICO claims based on
state foreclosure litigation. The Court holds that the New
Jersey litigation privilege does not bar the federal RICO claims
pled in this case, but the Noerr-Pennington doctrine does bar
these Plaintiffs' claims. Even if the Noerr-Pennington doctrine
did not bar this action, Plaintiffs' RICO claims would still
fail because Plaintiffs have not pled that Defendants' actions

2

were the proximate cause of their injuries. Plaintiffs' RICO claims will be dismissed with prejudice.

## II.  BACKGROUND

### a. Procedural History

At oral argument for a preliminary injunction [Docket Item 5], the Court encouraged Plaintiffs to shorten their Complaint [Docket Item 1], which was 105 pages long, excluding exhibits. Plaintiffs filed a 90-page, 277-paragraph Amended Complaint [Docket Item 16]. The Court addressed three motions to dismiss [Docket Items 20, 26, & 27] the Amended Complaint in Giles v. Phelan, Hallinan & Schmieg, L.L.P., 901 F. Supp. 2d 509 (D.N.J. 2012) ("Giles I"). The Court dismissed all of Plaintiffs' claims with prejudice except for the RICO claim, which the Court struck without prejudice to repleading because it was unnecessarily and confusingly prolix.[1]

---

[1] The Court's key holdings were: "(1) Count IV (breach of contract), Count V (money had and received), and Count VI (negligence) are dismissed with prejudice pursuant to Plaintiffs' voluntary dismissal; (2) claims against Defendant Wells Fargo & Company are dismissed with prejudice pursuant to Plaintiffs' voluntary dismissal; (3) all of Plaintiff Spivey's claims in Counts I, II, and III are dismissed with prejudice because she cannot challenge bankruptcy proofs of claims in this forum; (4) Count II (New Jersey Consumer Fraud Act) is dismissed with prejudice as to all Defendants because the New Jersey litigation privilege bars the Giles' NJCFA claims; (5) the Giles' RICO claims under Count I are stricken without prejudice to repleading because the Amended Complaint is unnecessarily and confusingly prolix, contains immaterial allegations, and lacks particularity with respect to each Defendant's individual fraud-

Plaintiffs Charles and Diane Giles then filed a Second Amended Complaint [Docket Item 65], which the Phelan parties argued via letter brief [Docket Item 71] did not comply with the length requirements in the Court's September 28, 2012 Order [Docket Item 63]. After two telephonic conferences with counsel, the Court ordered [Docket Item 73] Plaintiffs to file the TAC [Docket Item 74]. The TAC, consisting of 33 pages, is a more focused pleading, and it is the subject of the present motions to dismiss.

### b. Factual Background

The Court extensively summarized the factual background in Giles I. This Opinion only summarizes the factual allegations which relate to Plaintiffs Charles and Diane Giles[2] and which are necessary for the present analysis.

Defendant Phelan Hallinan & Schmieg P.C. ("Phelan P.C.") is a mortgage foreclosure law firm; Defendants Lawrence Phelan, Francis S. Hallinan, Daniel Schmieg, and Rosemarie Diamond were

---

based liability; (6) any claims involving assignments to which Plaintiffs were not parties are dismissed with prejudice; and (7) Defendants' Motion to Strike Plaintiffs' Notice of Relevant Federal Court Filings is granted." Giles, 901 F. Supp. 2d at 533.

[2] A representative plaintiff in a putative class action must show that he has personally been injured. "[T]he class plaintiff cannot rely on injuries suffered by other, unidentified members of the class." Green v. Green Mountain Coffee Roasters, Inc., 279 F.R.D. 275, 280 (D.N.J. 2011) (citations omitted).

all partners in Phelan P.C. in the time period relevant to this action; Defendants Full Spectrum Services Inc. and Land Title Services of New Jersey Inc. are default management service vendors owned and controlled by Lawrence Phelan, Francis Hallinan, and Daniel Schmieg. (TAC ¶ 1.) The Court will refer to these Defendants collectively as the "Phelan parties." Defendant Wells Fargo Bank, N.A. is a mortgage servicer that worked with Phelan P.C. (TAC ¶ 1.)

Plaintiffs Charles J. and Diane Giles owned a home in Barnegat Township, New Jersey, and obtained a mortgage from Argent Mortgage Company, LLC. (TAC ¶ 45.) Mr. and Mrs. Giles admittedly "fell behind on their mortgage." (TAC ¶ 45.)

On February 16, 2007, Phelan P.C. filed a foreclosure Complaint in the name of Wachovia against the Giles in the Superior Court, Chancery Division for Ocean County, New Jersey. (TAC ¶ 49.) Plaintiffs allege that Wachovia was not the proper plaintiff in the foreclosure action because Wachovia had sold its mortgage trust business over a year before the foreclosure complaint was filed. (TAC ¶ 50.) Plaintiffs also allege that Defendant Diamond attached two false certifications to the foreclosure complaint, wrongly attesting that all necessary parties had been joined and that a title search had been conducted to identify all entities with an interest in the

property. (TAC ¶ 53.) The Giles claim that they relied on these misrepresentations and "[h]ad they known that Phelan P.C. falsely claimed to represent a party that had divested its interest, if any, in their mortgage more than a year before the Foreclosure Complaint was filed, the Giles would have contested the wrongful foreclosure action against them . . . ." (TAC ¶ 55.)

On June 5, 2007, the Ocean County Court entered a default judgment against the Giles, authorizing a sale of the Giles' home. (TAC ¶ 57.) The Giles hired an attorney and applied for a stay of the Sheriff's sale so they could privately sell their home. (TAC ¶ 59, 61.)

The Giles sought assistance from Wachovia's corporate headquarters and learned that Wells Fargo Bank and Phelan P.C. lacked Wachovia's authorization to bring this suit because Wachovia did not hold the Giles' mortgage. (TAC ¶ 62.) On November 14, 2007, Phelan P.C. filed a motion with the Ocean County Superior Court seeking an order rescinding the assignment to Wachovia and amending the pleadings to reflect that U.S. Bank, not Wachovia, was the proper plaintiff. (TAC ¶ 65.)[3] The Giles opposed Phelan P.C.'s motions to rescind and amend and

_____

[3] The Giles now contend that evidence from other litigation undermines any contention that U.S. Bank was the proper plaintiff in the Giles' foreclosure action. (TAC ¶ 69.)

also filed a cross-motion to dismiss, asserting that Wachovia was not entitled to relief and that U.S. Bank could refile the foreclosure action after placing proper proof of its ownership in the record. (TAC ¶ 70.)

In December 2007, the Giles accepted a "far-below-market-value" offer to buy their house. (TAC ¶ 71.) They assert that they "agreed to this transaction, not because the offer was fair or because they lacked legal defenses to the foreclosure action, but because the Giles were depleted of financial or emotional resources with which to fight the wrongful foreclosure action . . . ." (TAC ¶ 71.)

Phelan P.C. sent a letter to the Giles claiming that the Giles owed legal fees and costs and the price of a property inspection. (TAC ¶ 72.) The Giles contested these charges and Phelan P.C. withdrew its demand for costs. (TAC ¶ 73.) The Giles contend, however, that "[o]ther members of the Proposed Class . . . *did* pay such overstated fees . . . ." (TAC ¶ 73.) In short, the Giles paid no legal fees or costs or inspection fees to any Defendant.

On January 18, 2008, the Ocean County Court entered an order granting Phelan P.C.'s motions to rescind and to amend the pleadings to name U.S. Bank as plaintiff, confirming Phelan P.C.'s voluntary dismissal of the foreclosure action, and

preserving the Giles' rights to all affirmative claims. (TAC ¶ 75.) The Phelan Parties attached a copy of this order to their motion to dismiss. [Docket Item 78-2, Ex. G.] The January 18, 2008 order also denied the Giles' motion to dismiss the foreclosure lawsuit. [Docket Item 78-2 at 49.] The order also specifically states that "Defendants' rights [i.e., the Giles' rights] as to all affirmative claims are hereby preserved." [Id.][4]

The Giles contend that Phelan P.C. continued to file foreclosure actions on behalf of entities without legal title to bring such actions. (TAC ¶ 78.)

The Giles Plaintiffs assert a RICO claim alleging that Defendants Wells Fargo Bank, Phelan P.C., Lawrence Phelan, Francis Hallinan, Rosemarie Diamond, and Daniel Schmieg, Full Spectrum, and Land Title together comprised an enterprise with the purpose of defrauding homeowners by obtaining property through false representations, including fraudulent court filings.[5] The Giles allege that Defendants Wells Fargo Bank and

---

[4] The Phelan parties also attached an order from February 6, 2008, which bears a court seal and which contains the same terms as the January 18, 2008 order, with two additional terms regarding the rescindment of the assignment to Wachovia. [Docket Item 78-2 at 43-44.] Both the January 18, 2008 and the February 6, 2008 orders contain identical language preserving the Giles' rights to all affirmative claims.

[5] Plaintiffs also reference fraud on the Pennsylvania courts and the actions of Phelan Hallinan & Schmieg, LLP, which is not

Phelan P.C. used the name of Wachovia or U.S. Bank in foreclosure proceedings because they were "unable to ascertain the identity of the party that owned the Homeowners' mortgages" and thus "acted with willful and reckless indifference to the identity of the *bona fide* owner of the Homeowners' mortgages." (TAC ¶ 95.) The Giles also allege that Defendants Wells Fargo Bank and Phelan P.C. intended to deceive New Jersey homeowners and courts. (TAC ¶ 95.)

The Giles allege damages including their attorneys' fees from defending the foreclosure litigation and loss of property value from their acceptance of a sale offer that was below market value.

### c. Parties' Arguments

Wells Fargo Bank argues that the Noerr-Pennington doctrine, the New Jersey litigation privilege, and the statute of limitations bar Plaintiffs' RICO claims and that Plaintiffs' RICO claims are insufficient because Plaintiffs have not adequately alleged fraud, an enterprise, and proximate cause.

The Phelan parties incorporate Wells Fargo Bank's arguments and, in addition, argue that res judicata, collateral estoppel,

---

presently a party to this litigation. The Court has only summarized the allegations that relate to the Giles' foreclosure without summarizing references to non-parties.

and the entire controversy doctrine bar Plaintiffs' claims[6];
Plaintiffs' RICO claims are time-barred; professionals providing
legal services cannot be held liable under RICO; Plaintiffs have
not alleged a pattern of racketeering activity; there is no
enterprise; and Plaintiffs have not alleged any injury because
they did not pay fees and Defendants were not the proximate
cause of Plaintiffs' decision to sell their home.

### III. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) may be granted only if, accepting all well-pleaded
allegations in the complaint as true and viewing them in the
light most favorable to the plaintiff, a court concludes that
the plaintiff failed to set forth fair notice of what the claim
is and the grounds upon which it rests that make such a claim
plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S.
544, 555 (2007). A complaint will survive a motion to dismiss if
it contains sufficient factual matter to "state a claim to
relief that is plausible on its face." Ashcroft v. Iqbal, 556

---

[6] The Phelan parties also argue that the Rooker-Feldman doctrine
bars Plaintiffs' claims, but the Court has already held that the
Rooker-Feldman doctrine does not apply in Giles I: "The doctrine
does not bar . . . the Giles' claims, even if the dismissal
against the Giles was a final judgment." Giles, 901 F. Supp. 2d
at 521. The Court need not repeat its Rooker-Feldman analysis
here.

U.S. 662, 678 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id.

The parties attached many documents to their briefing, some of which were mentioned in the TAC, but many were not. The Court only considered those documents that were referenced in the TAC, such as the Ocean County Superior Court's January 18, 2008 and the February 6, 2008 orders. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . . However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered" (citations omitted)).

## IV. ANALYSIS

### a. New Jersey Litigation Privilege

The New Jersey litigation privilege does not bar Plaintiffs' RICO claim. Giles I summarized the New Jersey litigation privilege's broad scope, holding that it barred Plaintiffs' New Jersey Consumer Fraud Act claim. The Court declined to decide whether the privilege barred Plaintiffs' RICO

11

claim because Giles I granted the Phelan parties' motion to strike the RICO claim. The issue is now before the Court.

While there is no binding precedent on point, there is ample authority indicating that a common law litigation privilege cannot bar a federal statutory claim. The United States Supreme Court considered whether sovereign immunity barred a 42 U.S.C. § 1983 claim against a school board and held, "as to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common-law heritage." Howlett By & Through Howlett v. Rose, 496 U.S. 356, 383 (1990). And the Supreme Court has held that "[a] construction of the federal [§ 1983] statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced." Martinez v. State of Cal., 444 U.S. 277, 284 n.8 (1980) (citation omitted). While the Howlett and Martinez cases involved § 1983, which is intended to protect basic constitutional rights, the emphasis upon the Supremacy Clause is equally applicable here.

There is precedent in this District for ensuring that the New Jersey litigation privilege does not bar federal causes of action: "the application of New Jersey's litigation privilege

here will not undermine a federal cause of action or interest." Waterloov Gutter Prot. Sys. Co., Inc. v. Absolute Gutter Prot., L.L.C., 64 F. Supp. 2d 398, 412 (D.N.J. 1999). The Seventh Circuit has specifically held that federal causes of action trump state privileges: "A state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action." Steffes v. Stepan Co., 144 F.3d 1070, 1074 (7th Cir. 1998).

California district courts have held that the RICO statute preempts the state litigation privilege. See, e.g., Johnson v. JP Morgan Chase Bank DBA Chase Manhattan, 536 F.Supp.2d 1207, 1213 (E.D. Cal. 2008) ("federal claims [including RICO claim] preempt the litigation privilege"); Menjivar v. Trophy Props., IV DE, LLC, Civ. 06-3086, 2006 WL 2884396, at *15 (N.D.Cal. Oct. 10, 2006) (no authority exists to apply state litigation privilege to federal RICO claims). Florida district courts also have questioned the application of the Florida litigation privilege to RICO claims: "While the Florida litigation privilege clearly applies as a defense to state tort claims, . . . it is not clear that the Florida litigation privilege applies to RICO or other statutory claims in the Eleventh Circuit." Acosta v. Campbell, Civ. 04-7610, 2006 WL 146208, at *12 (M.D. Fla. Jan. 18, 2006) (citations omitted).

The Court has previously noted in dicta that the New Jersey Supreme Court has "held that the common law privilege is applicable even to a federal claim under 42 U.S.C. § 1983" and that "it appears under New Jersey law that the only claim from which defendants expressly cannot seek protection through the litigation privilege is malicious prosecution." Rickenbach v. Wells Fargo Bank, N.A., 635 F. Supp. 2d 389, 402 (D.N.J. 2009) (citing Loigman v. Twp. Comm. of Twp. of Middletown, 185 N.J. 566 (2006)). The Rickenbach case did not, however, apply the New Jersey litigation privilege to federal claims; the Rickenbach case applied the litigation privilege to state tort claims. Id. Defendants emphasize the Loigman case, which held that the New Jersey litigation privilege bars a federal § 1983 claim. But the Court must apply federal law to the question of whether a state privilege bars a federal claim. See Martinez, 444 U.S. at 284 n.8 ("[California] immunity claim raises a question of federal law"). Federal precedent shows that state litigation privileges do not bar federal RICO claims.

### b. Collateral Estoppel, Res Judicata, and the Entire Controversy Doctrine

Collateral estoppel, res judicata and the entire controversy doctrine do not bar Plaintiffs' claims. The Phelan

parties argue that "[t]he TAC is an attack on the Final
Foreclosure Judgment based on a mistake in naming the
Foreclosure plaintiff – the very argument the Giles lost in the
Foreclosure." (Phelan Parties' Mot. Dismiss at 16.) But the
Ocean County Superior Court's January 18, 2008 and the February
6, 2008 orders both mandated that "Defendants' rights as to all
affirmative claims are hereby preserved." [Docket Item 78-2 at
42, 44.] Given the specific language of those orders, the Court
cannot now hold that the Giles are precluded from raising an
affirmative claim against the Defendants in this action.

### c. The Noerr-Pennington Doctrine

The Noerr-Pennington doctrine derives from the First
Amendment's guarantee of "the right of the people . . . to
petition the Government for a redress of grievances." U.S.
Const. Amend. I. Under the Noerr-Pennington doctrine, those who
petition any department of the government for redress are
generally immune from statutory liability for their petitioning
conduct. This right includes litigation: "the right to petition
extends to all departments of the Government. The right of
access to the courts is indeed but one aspect of the right of
petition." Cal. Motor Transp. Co. v. Trucking Unlimited, 404
U.S. 508, 510 (1972). The Supreme Court has thus emphasized that
the First Amendment right to petition extends to all departments

of government, including the courts, and has not limited the doctrine to particular types of courts or court cases.

Although the Noerr-Pennington doctrine originally applied to antitrust cases, courts have expanded its application to other contexts. See, e.g., BE & K Const. Co. v. N.L.R.B., 536 U.S. 516 (2002) (applying Noerr-Pennington doctrine to National Labor Relations Act); Sosa v. DIRECTV, Inc., 437 F.3d 923 (9th Cir. 2006) (applying Noerr-Pennington doctrine to RICO claims involving pre-litigation demand letters); Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (3d Cir. 1988) (Noerr-Pennington doctrine immunized defendants from tort liability for petitioning government to shut down nursing home). The Third Circuit has noted these extensions of the doctrine: "This court, along with other courts, has by analogy extended the Noerr-Pennington doctrine to offer protection to citizens' petitioning activities in contexts outside the antitrust area as well." We, Inc. v. City of Philadelphia, 174 F.3d 322, 326-27 (3d Cir. 1999). The Ninth Circuit has thus applied the Noerr-Pennington doctrine to RICO claims, and the Third Circuit and the United States Supreme Court have extended the doctrine to claims outside of the antitrust context in which the doctrine originally arose.

The Giles' claims are based upon Defendants' actions in petitioning the state foreclosure court. Because the doctrine applies to petitioning activity in all governmental departments, including the courts, and because the doctrine has expanded beyond its antitrust origins, the Court holds that the Noerr-Pennington doctrine bars Plaintiffs' RICO claims arising out of Defendants' prosecution of the Ocean County Superior Court foreclosure action.

Plaintiffs argue that the Noerr-Pennington doctrine provides only a defense to liability, not immunity from suit. [Docket Item 82, Pl. Opp'n Wells Fargo Bank's Mot. Dismiss at 9.) Plaintiffs cite We, Inc. v. City of Philadelphia, 174 F.3d 322, 326 (3d Cir. 1999), which holds that "the Noerr-Pennington doctrine does not provide an immunity from suit but rather only a defense against liability . . . ." But the issue in We, Inc. was whether a summary judgment order denying the Noerr-Pennington defense was an appealable collateral order. The Third Circuit held that such an order was reviewable on appeal from final judgment and that the Defendant was not immunized from the burden of standing trial. We, Inc. did not hold that a trial court cannot dismiss a case on Noerr-Pennington grounds.

The Noerr-Pennington doctrine has one exception, which does not apply here. The doctrine does not apply to sham litigation.

The Supreme Court has adopted a two-part definition of sham litigation: First, "the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; second, the litigant's subjective motivation must "conceal[] an attempt to interfere *directly* with the business relationships of a competitor . . . through the use [of] the governmental process--as opposed to the outcome of that process--as an anticompetitive weapon." Prof'l Real Estate Investors, Inc. v. Columbia Pictures, 508 U.S. 49, 60-61 (citations omitted). To fall within this exception, a lawsuit "must be a sham *both* objectively and subjectively." BE & K Const. Co., 536 U.S. at 526.

Plaintiffs have not satisfied the objective prong of the sham litigation test. The Supreme Court has defined objective reasonableness as indicating that no reasonable litigant could realistically expect success on the merits, noting that "[a] winning lawsuit is by definition a reasonable effort at petitioning for redress and therefore not a sham." Prof'l Real Estate Investors, 508 U.S. at 60 n.5. Defendants did, in fact, succeed in Ocean County Superior Court, receiving leave of court to amend the pleadings to correct the plaintiff's name. The Supreme Court has held that a successful "effort to influence governmental action . . . certainly cannot be characterized as a

18

sham." <u>Allied Tube & Conduit Corp. v. Indian Head, Inc.</u>, 486 U.S. 492, 502 (1988). Although the Giles' foreclosure action ended via voluntary dismissal in light of the Giles' sale of their home and payment of the principal and interest due, the TAC makes clear that Defendants were succeeding in the foreclosure litigation. Even now, the Giles have not suggested any basis for succeeding in their defense of the foreclosure action by the correct plaintiff.

The Third Circuit has explained that "[a] determination [of objective basis] requires consideration, *inter alia*, of the outcome of the proceedings . . . and whether these claimed misrepresentations or improper actions would have been significant to the ultimate outcome or continuation of the proceeding." <u>Cheminor Drugs, Ltd. v. Ethyl Corp.</u>, 168 F.3d 119, 124 (3d Cir. 1999) (citation omitted). Defendants did inform the Superior Court that Wachovia was the improper plaintiff; the Superior Court allowed Defendants to amend the pleadings and denied the Giles' motion to dismiss on the grounds that Wachovia lacked standing. Even assuming the truth of the Giles' allegations that Defendants deliberately filed fraudulent documents in foreclosure court, the Superior Court's denial of the Giles' motion to dismiss demonstrates that the alleged misrepresentations were not significant to the ultimate outcome

19

or continuation of the foreclosure proceeding. The foreclosure lawsuit was not objectively baseless.

Plaintiffs argue that "[t]he vagaries of motion practice before the Ocean County Court in the wrongful foreclosure action against the Giles . . . are not determinative of whether WFB and Phelan P.C. had an objective basis and 'probable cause' to bring their foreclosure action in the first instance." (Pl. Opp'n Wells Fargo Bank's Mot. Dismiss at 18.) As support for this argument, the Giles cite In re Flonase Antitrust Litigation, 795 F. Supp. 2d 300 (E.D. Pa. 2011), in which the district court held that Noerr-Pennington liability does not apply. The Flonase court held that the grant of a temporary restraining order in state court litigation did not necessarily show that the state court litigation had an objective basis. The Flonase court quoted a state court judge reconsidering the temporary restraining order issues at the preliminary injunction hearing and denying the preliminary injunction motion because "if I had any hesitation whatsoever that you had any kind of likelihood of prevailing in this case, I would not hesitate. But I simply don't have it . . . . I just don't see any likelihood that you're going to prevail." Flonase, 795 F. Supp. 2d at 317. The Flonase court was therefore presented with clear indications from the state court that the original lawsuit had no likelihood

20

of success. There are no such indications in this case. To be clear, the Court is not holding that any favorable disposition in prior court proceedings guarantees that the Noerr-Pennington doctrine will apply. The Court is simply holding that, based on the facts of this particular case, Defendants had an objective basis for bringing the foreclosure lawsuit.

The Giles also argue that dismissal on Noerr-Pennington grounds is premature because objective baselessness is generally a question of fact for the jury. (Pl. Opp'n Wells Fargo Bank Mot. Dismiss at 21-22.) In this case, however, "all facts relevant to the determination of Noerr-Pennington applicability are undisputed and contained within the record we may consider in deciding this motion to dismiss." Trustees of Univ. of Pennsylvania v. St. Jude Children's Research Hosp., --- F. Supp. 2d ---, Civ. 12-4122, 2013 WL 1499518, at *8 (E.D. Pa. Apr. 12, 2013). The St. Jude Children's case quoted the Supreme Court's holding that "[w]here, as here, there is no dispute over the predicate facts of the underlying legal proceeding, a court may decide probable cause as a matter of law." Prof'l Real Estate Investors, 508 U.S. at 63. In this case, all the relevant facts are before the Court: the Giles were in default, Defendants initially used the wrong plaintiff's name in the foreclosure lawsuit, the Giles sought to dismiss the foreclosure action due

to Wachovia's lack of standing, and the foreclosure court denied the Giles' motion to dismiss and permitted the correction of the bank's name. These facts show that the foreclosure lawsuit was not objectively baseless.

The Court need not analyze the second prong of the sham litigation test because "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." Prof'l Real Estate Investors, 508 U.S. at 60.

The sham litigation exception does not apply; the Noerr-Pennington doctrine bars this action.

### d. RICO Statute of Limitations

Defendants contend that the statute of limitations bars Plaintiffs' RICO claims. Civil RICO claims are subject to a four-year statute of limitations. Mathews v. Kidder, Peabody & Co., Inc., 260 F.3d 239, 245 (3d Cir. 2001). Defendants assert that Plaintiffs' RICO claim accrued on October 23, 2007, the date on which the TAC alleges that Wachovia informed the Giles' counsel that Wachovia had no interest in the Giles' mortgage.[7]

---

[7] The Phelan parties allege that the Giles may have become aware of the wrong plaintiff earlier than October 23, 2007, but the allegations in the TAC do not support any date other than October 23, 2007. See Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) ("If the [statute of limitations] bar

22

(TAC ¶ 63.) Plaintiffs filed their original Complaint [Docket Item 1] on October 24, 2011; Defendants argue that Plaintiffs exceeded the statute of limitations. But October 23, 2011 was a Sunday. Rule 6(a)(1)(C) of the Fed. R. Civ. P. specifies that, in computing time, "if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Therefore, the statute of limitations did not expire until October 24, 2011, the day on which Plaintiffs filed their Complaint. The statute of limitations does not bar Plaintiffs' RICO claim.

### e. Lack of Proximate Cause for RICO Claim

The Giles allege that their injuries consist of attorney's fees incurred during the foreclosure litigation and $49,000 in lost property value because they sold their home for less than

---

is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).") In addition, the Phelan parties argue that the operative date is June 5, 2007, the date of the final foreclosure judgment. The parties have disputed when or if the foreclosure action had a final judgment, but the essence of Plaintiffs' claim is not that they were subject to foreclosure, but that Defendants knowingly initiated a foreclosure action on behalf of a plaintiff with no standing. The Court will therefore use October 23, 2007, when the TAC alleges the Giles became aware that Wachovia was the wrong plaintiff, as the relevant date at this procedural posture.

market value.[8] (TAC ¶¶ 74, 110.) Defendants argue that the Giles lack standing to a assert a RICO claim because Defendants' actions were not the proximate cause of these alleged injuries: Defendants argue that the Giles were behind on mortgage payments, voluntarily sold their home, and hired an attorney because they were in foreclosure proceedings due to default.

To sustain a RICO claim, the Giles must show that Defendants' actions were the proximate cause of their injuries. RICO has a "standing requirement of injury to plaintiff's business or property by reason of the RICO violation." In re Sunrise Sec. Litig., 916 F.2d 874, 883 (3d Cir. 1990). In other words, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his . . . property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). The proximate cause requirement "limit[s] a person's responsibility for the consequences of that person's own acts." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992). There must be "some direct relation between the injury asserted and the injurious

---

[8] The Giles also assert that the proposed class sustained damages in the form of inflated foreclosure fees but the Giles did not sustain any such fees. As explained supra, the Giles must show that they have personally been injured and "cannot rely on injuries suffered by other, unidentified members of the class." Green Mountain Coffee Roasters, 279 F.R.D. at 280 (citation omitted). Thus, the Giles must aver only the damages they suffered as a proximate result of Defendants' RICO violations.

conduct alleged." Id. This requirement is integral to the
Court's analysis: "When a court evaluates a RICO claim for
proximate causation, the central question it must ask is whether
the alleged violation led directly to the plaintiff's injuries."
Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006).

The Giles' alleged injuries all stem from the foreclosure
proceedings: their need for legal representation and their
decision to sell their home resulted from the foreclosure
lawsuit. The Giles have not shown that Defendants' use of
Wachovia's name in the foreclosure action directly caused the
foreclosure proceedings.

The Giles have acknowledged that they defaulted on their
monthly payments. The New Jersey Appellate Division examined a
case in which the plaintiff in a foreclosure action lacked
standing and the foreclosure defendants challenged the action on
standing grounds. The Appellate Division quoted the trial
court's oral opinion, which emphasized "the validity of the note
and mortgage in the sense that there is no claim that the money
was not received, nor that they have defaulted and there is no
underlying defense as to the basic components of the mortgage."
Deutsche Bank Nat. Trust Co. v. Russo, 429 N.J. Super. 91, 98
(App. Div. 2012). The trial court also noted that "at no time
have the defendants ever said you have the wrong parties, or we

25

didn't borrow the money, or we didn't default." Id. Those same
factors apply here: The Giles have not challenged the validity
of the underlying mortgage and have not denied that they were in
default. The direct cause of the foreclosure proceedings was the
Giles' failure to make mortgage payments.

In addition, Defendants' use of the wrong plaintiff's name
in the foreclosure action does not void the foreclosure
proceedings. New Jersey state courts have different standing
requirements than federal courts. The New Jersey Appellate
Division has explained that "standing is not a jurisdictional
issue in our State court system and, therefore, a foreclosure
judgment obtained by a party that lacked standing is not 'void'
. . . ." Russo, 429 N.J. Super. at 101. The Giles cannot argue
that Defendants' use of the wrong plaintiff's name was the
proximate cause of their injuries when the wrong plaintiff's
name does not void the foreclosure proceedings.

Plaintiffs argue that Russo is inapposite because the Russo
court "held merely that the *remedy* for lack of standing in this
particular context is left to the discretion of the lower court
judge (which is accorded 'substantial deference') and that
dismissal of the foreclosure action is not necessarily the
*exclusive remedy* available to New Jersey Chancery Courts."
[Docket Item 83, Pl. Opp'n to Phelan Parties' Mot. Dismiss at

23.] The Giles have thus noted that dismissal is not the exclusive remedy for lack of standing in New Jersey foreclosure court; this argument supports Defendants' argument that the use of Wachovia's name was not the proximate cause of the Giles' injuries. In the Giles' foreclosure action, in fact, the Superior Court denied the Giles' motion to dismiss the foreclosure action on the basis of Wachovia's lack of standing. The Giles argue that "[h]ad the Ocean County Court known about these misrepresentations, it would not have entered the judgment in the first place." (Pl. Opp'n Phelan Parties' Mot. Dismiss at 30.) But the Ocean County Superior Court denied the Giles' motion to dismiss on standing grounds, and the Russo court held that a lack of standing does not automatically and necessarily invalidate a foreclosure action in New Jersey. Wachovia's name on the foreclosure complaint was not, therefore, the proximate cause of the Giles' injuries.

In addition, the TAC explains that Wells Fargo Bank was the mortgage servicer for the Giles' mortgage and was responsible for initiating foreclosure proceedings in the event of default. (TAC ¶¶ 29, 48.) After initiating a foreclosure proceeding, Wells Fargo Bank "communicates the purported identity of the legal owner of a defaulted mortgage to outside foreclosure firms so that the name of a plaintiff can be inserted into complaints

27

that WFB directs them to file." (TAC ¶ 48.) In other words, the TAC makes clear that Wells Fargo Bank, not the legal owner, initiates foreclosure proceedings when homeowners are in default. There was and is no question that the Giles were in default.

Moreover, the Giles cannot attribute their attorney's fee expenses in the foreclosure litigation to Defendants' use of Wachovia's name. The TAC states that the Giles "hired an attorney to protect their legal interests;" it does not allege that the Giles hired an attorney specifically to address the issue of the wrong plaintiff. (TAC ¶ 59.) As explained <u>supra</u>, the Giles were in foreclosure proceedings because they defaulted on payments; any need to protect their legal interests stems from their effort to defend the foreclosure case that arose from their failure to make payments. Defendant Phelan P.C., as noted above, brought the mistaken naming of Wachovia to the attention of the Superior Court on November 14, 2007, when it filed the motion to substitute U.S. Bank as plaintiff, which the Superior Court granted.

The Giles also cannot attribute the loss in home value to Defendants' actions. The Giles assert that they "accepted a far-below-market-value offer to buy their house" and that Defendants caused the lost property value because "[h]ad Phelan P.C. and

28

WFB suspended their wrongful foreclosure prosecution in the name of Wachovia and allowed the Giles a reasonable opportunity to sell their property at a price commensurate with its true market value, their liability for damages sustained by the Giles could have been mitigated." (TAC ¶ 71.) The Giles assert that Defendants "operated inflexibly" and "further delay was no acceptable option . . . ." (TAC ¶ 71.) The Giles have not shown that Defendants had any legal obligation to allow them more time to solicit a better offer. In addition, the Giles chose to sell their home and that choice inevitably raises questions about their role in determining the sale price. For example, Defendants are not responsible for the Giles' realtor choice, their bargaining tactics, or myriad other factors that could impact the sale price. Moreover, the Giles sold their home in December 2007, after Phelan P.C. had brought the naming mistake to the Superior Court's attention in the motion to substitute U.S. Bank as plaintiff and before the Ocean County Court denied the Giles' motion to dismiss in its January 18, 2008 order.

The TAC does not allege that the Defendants' alleged wrongful conduct in naming the incorrect bank in the original pleadings caused harm that the naming of the correct bank, by substitution, would not have caused. For a property in foreclosure, where there is no dispute that the homeowners have

29

breached their payment obligations and the mortgage is in default, the relevant comparison is the price gotten in a private distress sale and the price that would have been obtained in a foreclosure sale, not the theoretical price of an arm's length transaction between willing sellers and buyers. In short, the TAC fails to demonstrate a plausible basis for damages arising from Defendants' use of the incorrect bank's name under the circumstances presented here, in which the Superior Court granted leave to correct the bank's name and the Plaintiffs do not aver that they had not defaulted on their mortgage.

The proximate cause requirement is based upon a rationale that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 269 (1992).

The Giles have not shown that Defendants are directly responsible for the lost sale value of their home and for their attorney's fees. They have not, therefore, established that

Defendants' actions were the proximate cause of their injuries. The Giles' RICO claim must be dismissed with prejudice.[9]

**V.   CONCLUSION**

The Court's principal holdings are: (1) the New Jersey litigation privilege does not apply to RICO claims; (2) the Noerr-Pennington doctrine bars this action; (3) the RICO statute of limitations, res judicata, collateral estoppel, and the entire controversy doctrine do not bar this action; and (4) even if not barred by Noerr-Pennington, the Giles' RICO claim will be dismissed with prejudice because the Giles have not shown that Defendants' actions were the proximate cause of their injuries.

The case will not be closed on the docket because the Court must still adjudicate the Phelan Parties' Motion for Sanctions [Docket Item 88]. Pursuant to the Court's May 15, 2013 Order [Docket Item 90], Plaintiffs' response to the Motion for Sanctions shall be filed no later than fourteen days after this Opinion and the accompanying Order are entered on the docket. The Phelan Parties may reply no later than seven days after Plaintiffs file their response.

---

[9] Because the Giles have not pled proximate cause, the Court need not analyze Defendants' other arguments regarding deficiencies in their RICO claims.

31

**June 4, 2013**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge