UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES J. and DIANE GILES,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., et al.,<br><br>Defendants. | CASE NO.<br>1:11-CV-06239(JBS)(KMW) |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION OF THE PHELAN
PARTIES FOR SANCTIONS AND RELATED RELIEF BASED ON
THE THIRD AMENDED COMPLAINT, PURSUANT TO FRCP 11,
28 U.S.C. § 1927 AND/OR THE COURT'S INHERENT POWERS**

While principles of free speech do not authorize or sanction those who falsely yell "Fire" in a crowded theater when it is objectively clear that there is not even smoke, Rule 11 and related principles do penalize and sanction lawyers who falsely scream "RICO Fraud" through four (4) iterations of their Complaint without stopping, looking and listening with proper due diligence to the law and the facts, which are objectively devoid of support.

A case for granting sanctions could not be clearer than here. The Giles' opposition to this Sanctions Motion utterly fails to demonstrate that the Giles – represented by not one, not two, but three law firms – had any affirmative support for their RICO claim. The RICO claim was doomed from the outset, as confirmed in the Court's Opinion and Order dismissing the Third

1

Amended Complaint ("TAC") with prejudice. Plaintiffs simply have nothing to argue to contravene the fact that the RICO claim was frivolous at inception, and never improved. That reality shines through, no matter how the Giles' counsel try to distract the Court's attention to irrelevant issues or how they aggrandize and self-promote their meager efforts and lack of diligence and objectivity in drafting and litigating the failed TAC.

The test for sanctions is objective, and simply stated the Phelan Parties ("Phelan") are entitled to sanctions because the Giles' counsel did not do their homework but bulled ahead, seemingly mesmerized by their talismanic mantra of fraud, which they attempted to emblazon on an inadvertent misnaming error. Indeed, the Giles' foreclosure counsel characterized this trustee naming error as a mistake. See, e.g., May 14, 2013 Transcript ("Tr.") at 70-71 (filed with the Giles' opposition as Document No. 98-4). Nor could the Giles' counsel ever causally connect any alleged damages to the naming mistake. Finally, the Giles' counsel failed to understand that in addition to the TAC's lack of substance merit, the preclusionary Noerr-Pennington doctrine barred their RICO claim.[1]

---

[1] The Sanctions Motion is based on all of the arguments raised in the briefs of the Phelan Parties and co-defendant Well Fargo. See Sanctions Motion Brief at 3 (Document No. 88).

2

Accordingly, the Sanctions Motion should be granted. See, e.g., Jackson v. Rohm & Haas Co., 366 F. App'x 342, 347 (3d Cir. 2010) (affirming award of sanctions of two-thirds of defense costs because "claims brought pursuant to RICO . . . were completely without merit, and Jackson's brief provides no sound arguments to the contrary"). Similarly, there is nothing in this record which shows that the RICO claim had any merit whatsoever. Instead the Giles' counsel, hoping to distract the Court from their own failures and lack of affirmative support for the RICO claim, make scurrilous and baseless allegations to support an entirely improper request for sanctions against Phelan and its counsel.

Phelan recognizes and appreciates responsible, vigorous advocacy, and understands that sanctions are not automatically imposed against a losing party. However when, as here, four complaints are filed and repeatedly pursued with no legitimate basis, with no reasonable investigation, and with no other purpose than to harass, Courts in the Third Circuit will not hesitate to impose sanctions. Measures such as sanctions are necessary not only to make the prevailing party whole, but to preserve the integrity and efficacy of the courts.

### The Court's Opinion Dismissing the TAC with Prejudice

On June 4, 2013, this Court dismissed the TAC in its entirety with prejudice, holding that the Giles had not stated a plausible claim in alleging that Phelan caused injuries by commencing a foreclosure on behalf of its client, the servicer of the Giles' mortgage, Wells Fargo, with a Complaint that initially mistakenly named the mortgage holder trustee. To the contrary, this Court held that "[t]he direct cause of the foreclosure proceedings was the Giles' failure to make mortgage payments." Opinion at 26.

The Giles and their counsel knew long before they initiated this case that the cause of the injury claimed by the Giles was their own failure to pay their mortgage, and not anything that Phelan did. They were well aware that the State Court denied the Giles' Motion to Dismiss and granted Phelan's Motion to Amend the Foreclosure Complaint to substitute the correct trustee as the foreclosure plaintiff. Id. at 28. Therefore "[t]he Giles cannot argue that Defendants' use of the wrong plaintiff's name was the proximate cause of their injuries when the wrong plaintiff's name does not void the foreclosure proceedings." Id. at 26.

Additionally, the TAC concedes that Wells Fargo "was the mortgage servicer for the Giles' mortgage and was responsible for initiating foreclosure proceedings in the event of default."

4

Id. at 27. As "[t]here was and is no question that the Giles were in default," the Giles could not show that Phelan initiating foreclosure proceedings on behalf of Wells Fargo was the cause of the Giles' injuries. These allegations straight out of the TAC belied Plaintiffs' claims.

### The Giles' Counsels' Multiplicity of Failures to Make Reasonable Inquiries as to the Applicable Facts and Law Warrant the Imposition of Sanctions

It is well-established that RICO claims are particularly susceptible to abuse by plaintiffs and their counsel:

> At a time when the federal courts — which are a scarce dispute resolution resource, indeed — are straining under the pressure of an ever-increasing caseload, we simply cannot tolerate this type of litigation. **Particularly with regard to civil RICO claims, plaintiffs must stop and think before filing them.** If used correctly, the civil RICO provisions may have many salutary effects. When used improperly, as in this case, those provisions allow a complainant to shake down his opponent and, given the expense of defending a RICO charge, to extort a settlement. Such improper use of the civil RICO provisions comes at the expense of the federal judiciary and those who need ready access to the courts.

(Bold emphasis added.) Casper v. Paine Webber Group, Inc., 787 F. Supp. 1480, 1500 (D.N.J. 1992) (quoting Pelletier v. Zweifel, 921 F.2d 1465, 1522 (11th Cir. 1991)).

The examples of the failures of Plaintiff's counsel to stop, look, listen and think cited in the Sanctions Motion are bolstered by more examples revealed at the May 14, 2013 oral argument on the Motion to Dismiss the TAC. The Giles' counsel:

* Admitted that the TAC does not allege that Phelan knew or should have known it was defrauding or attempting to defraud the Giles, and that the TAC does not claim that the conduct alleged was more than negligent or was reckless. Tr. at 63. They avoided answering this Court's question as to whether the TAC alleged that the Phelan attorney who signed the foreclosure complaint knew whether it was false. Tr. at 57, 62-63.

* Argued that alleged recklessness sufficed for RICO predicate acts when, as this Court pointed out, a predicate act must be a specified crime under federal law. Tr. at 63. Even as to recklessness, they admitted that they did not know to what extent it allegedly occurred, and that they had not reviewed records to determine that. Tr. at 64.

* Searched foreclosure cases from 2006 to 2011 and found none where the same falsely alleged RICO fraud occurred. Tr. at 28, 64. Yet they continued to allege those cases exist and formed a basis for the RICO claim.

* Had no evidence that Phelan handled similar cases. Tr. at 29, 72-73, 75. They even conceded that if there were no other cases, they should have dismissed the case -- Tr. at 56 -- but of course, they did not do so.

* Did not obtain and read the foreclosure file. When this Court indicated it could properly take notice of what occurred in the State Court, Giles' attorney Flynn replied that neither he nor any of the Giles' other lawyers were aware of the nature of the final hearing in the foreclosure case and had not seen the transcript of it. Tr. at e.g. 45-46, 55. Similarly, they did not know if there was any basis to challenge the foreclosure other than the failed claim as to the misnaming of the trustee. Tr. at 67-68.

* Admitted they failed to plead fraud with specificity. Tr. 56-57.

* Were not aware of bank privacy laws. Tr. at 47-48.

* Relied on speculation about unnamed potential class members to sustain their damages assertions when the law is clear that is improper. As this Court pointed out: "… I'm only looking at the plaintiff's claims today, and if the plaintiff didn't suffer damages that are compensable under RICO, then I don't know where this case is eventually going." Tr. at 59.

6

  \* Conceded that if the trustee had been correctly named originally in the foreclosure complaint, the result to the Giles would have been no different. Tr. at 60.

  \* Applied plainly inapt federal standing standards to argue that the State Foreclosure should have been dismissed. Tr. at 61.

  \* Argued that supposed injury to a state judicial system constituted sufficient allegations as to damages. Tr. at 62.

  \* Did not know the laws, rules and processes which govern how the amount of fees included in a foreclosure judgment is determined. Tr. at 76.

### The TAC's Abject Failure to Allege Proximate Cause Weighs Heavily in Favor of Imposing Sanctions

Moreover, the Opinion concluded that the TAC failed to establish proximate cause. Courts in this Circuit will not hesitate to impose sanctions for frivolous RICO claims which do not properly allege that the defendants' actions caused injury. See Jackson, supra, 366 F. App'x at 347; Balthazar v. Atlantic City Med. Ctr., 137 F. App'x 482, 483 (3d Cir. 2005) (upholding sanctions for prosecuting RICO claim when identical state court claim had already been dismissed); Morrow v. Blessing, No. 04-1161, 2004 WL 2223311 (E.D. Pa. Sept. 29, 2004) (awarding sanctions for frivolous RICO claim against an attorney for actions taken in the course of representing a client in a state court action); Alexander v. Jenkins, No. 89-4050, 1990 WL 98960 at *5 (E.D. Pa. July 13, 1990)(sanctions awarded where counsel "made a 'federal case'" out of simple real estate deal and "it is clear from the pleadings that plaintiffs and/or their

7

attorneys knew that their RICO allegations were frivolous and insubstantial").

The Giles' counsel only paid lip service to what they acknowledged is the responsibility to "Stop, Think, Investigate and Research" before filing complaints or conducting litigation, utterly failing to make diligent efforts before initiating this case, much less after filing any of their 4 complaints. Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987). Even a cursory investigation into the law and the facts would have revealed that there was no basis to allege that any actions by Phelan caused the Giles' alleged damages.

Morrow, supra, is directly on point, imposing sanctions under analogous facts, where there was no basis for alleging that defendants' actions caused any RICO damages. The Morrow RICO claim was based on anonymous letters potentially written by a defendant which were submitted by counsel in state court child support proceedings. Id. at *1. Plaintiff sued opposing counsel in the state court custody proceeding under RICO for submitting these letters, a claim which was held to be patently frivolous:

> Defendant Blessing, through her law firm, only made use of two anonymous letters in the course of her representation of her clients Howard and Henry. **Even assuming Blessing had reason to know they were false does not give rise to a RICO case. . . .**
> **The Plaintiff's naming of attorney Blessing and her law firm under the paucity of facts is the most egregious abuse under Rule 11. The Court does not find any grounds whatsoever for naming them as defendants**

8

>under any theory of law as **they were merely representing their clients** in domestic relations litigation.

Id. at *5-*6. (Bold emphasis added.)

The Morrow court explained that the RICO claim was frivolous because "**Plaintiff's counsel failed to allege how the anonymous letters proximately caused Plaintiff any injury**" and plaintiff "**had no grounds to allege causation.**" Id. at *6. (Bold emphasis added.) Even if the use of an anonymous letter caused the family court to order payment of child support, and even if that were a cognizable RICO injury, "too many other factors" were involved in a child support determination to allow any reasonable person to assert causation. Id.

This case is even more egregious than Morrow, because the Foreclosure Court granted Phelan's Motion to correct the naming error (Opinion at 29), rendering it patently frivolous for the Giles to allege that any action by Phelan caused their damages. Further, the TAC "makes clear that Wells Fargo Bank, not the legal owner, initiates foreclosure proceedings when homeowners are in default. There was and is no question that the Giles were in default." Id. at 28. Thus, the TAC is frivolous on its face, as confirmed by this Court's finding that "[t]he direct cause of the foreclosure proceedings was the Giles' failure to make mortgage payments." Id. at 26.

9

The Giles' counsel failed to stop, look, listen, think, investigate, and research. If they had done so, they would have recognized that they had "no grounds" to allege that Phelan caused the Giles any damages. From the outset of this case, it was self-evident that the proximate cause of any alleged damages was the Giles' own failure to make mortgage payments.

None of the Rule 11 cases cited by the Giles' counsel entitle them to evade sanctions. For example, Carney-Dunphy v. Title Co., No. 07-3972, 2009 WL 1874060 (D.N.J. June 30, 2009) (Simandle, J.) was decided on a motion for summary judgment, not a motion to dismiss, and the plaintiff pointed to factually analogous cases to support the claims. The Giles' response to this Sanctions Motion is notably lacking citation to any precedent showing that proximate cause can be proven under circumstances like those alleged in the TAC.

In Falah v. Statt Corporation, No. 08-1269, 2008 WL 5272054 (D.N.J. Dec. 16, 2008) (Simandle, J.), the complaint was dismissed for lack of subject matter jurisdiction, not for failure to state a claim, and sanctions were denied because plaintiff had evidence (a notarized letter) supporting the factual basis for her claims. Here, the TAC was dismissed for failure to state a claim, with the Giles having failed to establish that there was any evidentiary basis for alleging proximate cause (as well as the other elements of a RICO claim).

10

### Sanctions are Appropriate under 28 U.S.C. § 1927 and this Court's Inherent Powers

As to 28 U.S.C. § 1927, Plaintiffs incorrectly claim that Phelan failed to show the Giles' counsel's bad faith. It is well-established that "bad faith may be inferred when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." Alphonso v. Pitney Bowes, Inc., 356 F. Supp. 2d 442, 452 (D.N.J. 2005) (Simandle, J.) (Internal citation omitted.) In Alphonso, this Court ordered over $15,000 in sanctions against plaintiff's counsel for pursuing a damages claim that was never legally viable.

Here, bad faith can be inferred by multiple amendments of a frivolous complaint and the non-exhaustive examples of counsel's failings recited above. The filing of four complaints, none of which were legally viable due to lack of causation (among other reasons), unreasonably multiplied the motion practice needed to obtain the inevitable dismissal of the TAC with prejudice. As summarized in the Opinion (at 3), the Giles' pursued a total of four complaints -- first 105 pages, then 90 pages, then the overlength Second Amended Complaint, and finally the TAC -- requiring multiple responses by Phelan and vexatiously multiplying these proceedings.

11

## Plaintiffs' Improper Request for Sanctions Should be Denied

Disgruntled by the dismissal of the TAC, the Giles' counsel desperately lash out at Phelan having succeeded by asking for sanctions against Phelan or its counsel. This unsubstantiated request more than smacks of bad faith. The only allegations advanced for the imposition of sanctions against Phelan are:

- Phelan's interpretation of the State Court Order or transcript was incorrect.
- Phelan somehow withheld the contents of a publicly-available transcript of a hearing in the Foreclosure Case.
- Phelan engaged in misconduct in the representation of its client in the Foreclosure.

As to the first point, as evidenced by the motion practice here, the parties disputed the meaning of the State Court Order and transcript. This Court has denied a similar cross-motion for sanctions when the heart of the dispute was differing interpretations of a document. See Oswell v. Morgan Stanley Dean Witter & Co., Inc., 507 F. Supp. 2d 484, 493 (D.N.J. 2007) (Simandle, J.) ("While the Court may not agree with [movant]'s interpretation of certain terms in the Complaint or its view of the significance of the Oswell-Ribis Email, they are certainly plausible under the circumstances."). Phelan properly raised questions as to the meaning of that Order, based on the pertinent circumstances and relevant legal principles, advancing this and numerous other plausible arguments in its Motion to

12

Dismiss, rendering the Giles' request for sanctions wholly inappropriate.

The second point further confirms that the Giles' counsel failed to exercise even basic due diligence, since they could and should have obtained and reviewed the transcript from the Giles' foreclosure case. Not only do they ignore their own failing, but they cannot point to any duty of Phelan to have done their work for them by providing them with this publicly available transcript.

Finally, as to the third point, Phelan's actions in the State Court are wholly irrelevant to this Sanctions Motion, which is based on the conduct of the Giles' counsel in this Court. Nevertheless, to the extent Phelan's actions in the State Court are relevant, they are of no help to the Giles, since this Court held that "Defendants had an objective basis for bringing the foreclosure lawsuit." Opinion at 21. The Giles' baseless request for sanctions is transparent and should unhesitatingly be denied out of hand.

## CONCLUSION

Phelan was put to great effort and expense to defeat a case that should never have seen the light of day. Phelan first had to move repeatedly to rid the Giles' prolix complaints of bluster and irrelevancies and to have the Giles' counsel comply with pleading rules. The words and (lack of) actions by the Giles' counsel is the best – and more than sufficient – evidence of the need to impose sanctions, both to make Phelan whole and to protect the resources of this Court from being utilized by those who think they can leverage meritless claims through imposing huge costs on innocent defendants. If this Court is to best serve those truly entitled to legal relief, a clear and meaningful message needs to be sent that frivolous RICO claims, which impose inordinate burdens on the Court (as well as defendants), will in turn result in the imposition of sanctions at least equal to the costs that those lawyers who fail to think, investigate and research impose on their adversaries and the Courts. Anything less will result in less judicial resources being available for cases deserving of this Court's attention.

Phelan respectfully asks this Court to impose appropriate monetary and other sanctions on Plaintiffs' counsel, including granting Phelan its costs and counsel fees incurred in connection with this litigation, and such other and further relief as this Court deems just and proper.

Dated: July 19, 2013				FLASTER/GREENBERG, PC

By: *s/Kenneth S. Goodkind, Esq.*
Kenneth Goodkind, Esquire
Atty. I.D. No. KG1465
1810 Chapel Avenue West
Cherry Hill, NJ 08002
Tel: (856) 661-1900
Fax: (856) 661-1919
ken.goodkind@flastergreenberg.com
*Attorneys for Defendants Phelan Hallinan & Schmieg, P.C. (now Phelan Hallinan & Diamond, PC), Lawrence T. Phelan, Francis S. Hallinan, Daniel G. Schmieg, Rosemarie Diamond, Full Spectrum Services, Inc., and Land Title Services of New Jersey, Inc.*